NOTICE
Decision filed 11/30/20. The text of this decision may be changed or corrected prior to the filing of a Peti ion for Rehearing or the disposition of the same.

2020 IL App (5th) 200099

NO. 5-20-0099

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | Appeal from the |
| | ) | Circuit Court of |
| SANDRA D. DAHM-SCHELL, | ) | St. Clair County. |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| and | ) | No. 14-D-637 |
| | ) | |
| MARK R. SCHELL, | ) | Honorable |
| | ) | Patricia H. Kievlan, |
| Respondent-Appellee. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Boie and Wharton concurred in the judgment and opinion.

**OPINION**

¶ 1    On February 18, 2020, upon the motion of the petitioner, Sandra D. Dahm-Schell, the circuit court of St. Clair County certified the following question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019): "Whether inherited mandatory retirement distributions are income for purposes of child support and maintenance calculations." For the following reasons, we find that answering the certified question, as written, will not materially advance the ultimate termination of this litigation. As such, we limit the scope of our answer to the facts of this case. Accordingly, we answer the following question: "Whether mandatory distributions or withdrawals taken from an inherited individual retirement account (IRA)

1

containing money that has never been imputed against the recipient for the purposes of maintenance and child support calculations constitute 'income' under 750 ILCS 5/504(b-3) (West 2018) and 750 ILCS 5/505(a)(3) (West 2018)." Under these circumstances, we answer the certified question, as we have framed it, in the affirmative, holding that "gross income" and "net income," as defined in sections 504 and 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(b-3), 505(a)(3) (West 2018)), includes distributions or withdrawals taken from a party's IRA when said IRA only contains money received via inheritance and said inheritance has not previously been imputed on the party as income for the purposes of calculating child support and maintenance. Having answered the certified question as we have reframed it in order to materially advance the termination of this litigation, and in the interests of judicial economy and the need to reach an equitable result, we vacate the circuit court's order entered on September 5, 2018, refusing to consider the distributions from the inherited IRA as income and remand this cause with instructions that the circuit court recalculate the respondent's required child support and maintenance amounts with the inherited IRA distributions considered in its calculations as required by the Act.

¶ 2                                I. BACKGROUND

¶ 3      The petitioner and the respondent were married on November 7, 1992. On August 12, 2014, the petitioner filed for a dissolution of marriage. While the dissolution of marriage action was pending, the respondent's mother died, and he inherited approximately $615,000. The inheritance was held in various checking accounts and investment accounts, the majority being held in two IRAs. On October 11, 2016, the circuit court entered a judgment of dissolution of marriage in the parties' divorce case, No. 14-D-637. At the time the judgment was entered, the respondent was 56 years old and worked as a civil engineer. The parties had five children, three of whom were minors

2

at the time of the dissolution of the marriage. In the judgment of dissolution of marriage, the circuit court found that based upon the 2015 financial statements provided by the respondent, he earned a monthly gross income of $8301.83 at his place of employment. He also earned $462.33 per month in dividends from the inherited IRAs, bringing his monthly gross income to $8764.16 per month or $105,169.92 per year. The parties stipulated in the circuit court proceedings that the inheritance was the respondent's nonmarital property and the respondent was subsequently awarded all of the inheritance he received from his mother. When initially calculating child support and maintenance in its October 11, 2016, order, the circuit court did not include the respondent's inheritance as part of his income; instead, the circuit court only included the respondent's dividend earnings from the inherited IRAs.

¶ 4    On November 10, 2016, and November 21, 2016, respectively, the respondent and the petitioner filed motions to reconsider the circuit court's October 11, 2016, order. Relevant to this case, the petitioner in her November 21, 2016, motion to reconsider argued that the circuit court should have considered the respondent's inheritance when determining the proper amount of child support and maintenance required to be paid by the respondent. In the circuit court's amended judgment and rulings entered on December 18, 2017, and its second amended judgment and rulings entered on December 28, 2017, the circuit court reaffirmed its prior position and ordered that only "the dividends from [the respondent's] inheritance shall be considered and added to his monthly income for maintenance and child support purposes."

¶ 5    On March 28, 2017, prior to any rulings on the motions to reconsider or the circuit court's amended judgments discussed above, the respondent filed pleadings petitioning the circuit court to reduce the amount of child support and maintenance he was obligated to pay to the petitioner. The basis for the reduction articulated in the respondent's motion was that his employer reduced

3

his pay by 20% due to the company's financial issues and one of the previous three minor children had now graduated high school and was no longer a minor. In the respondent's financial affidavit prepared on March 21, 2018, in support of his petition to modify child support and maintenance, he claimed his gross monthly income at that time was $7800 from his regular employment as an engineer, with additional income as follows: (1) interest income of $1.67, (2) dividend income of $743.92, and (3) distributions and draws of $894.25 (from the inherited IRAs).

¶ 6    Thus, the respondent, at the time of the preparation of the 2018 financial statement, had a gross income of $9439.84 per month or $113,278.08 annually if the mandatory distributions and withdrawals from the inherited IRAs were included or a gross income of $8545.59 per month or $102,547.08 annually if the distributions were not included. In other words, $10,731 per year of the respondent's income could be attributed to distributions and withdrawals from the inherited IRAs. It is this portion of the respondent's income that the certified question before us seeks to have properly categorized by this court.

¶ 7    On May 3, 2018, a hearing was held in the circuit court on the respondent's March 28, 2017, motion to reduce child support and maintenance. The respondent testified at the hearing that he filed for the reduction because his employer cut his pay by 20% and one of his children was no longer a minor. He testified that he received $10,731 in mandatory IRA distributions from the inherited accounts as indicated by his financial statement, but noted that upon receiving those distributions, he immediately transferred the money into another "non-marital account" held in his name. He testified that these distributions were the mandatory minimum distributions required under federal law. He also testified that he received dividends on the inherited IRAs but clarified that he doesn't actually "receive the dividends. They're in an account that's reinvested." He then went on to affirm that these dividends were still considered income.

4

¶ 8    It was the respondent's position during the hearing that his mandatory withdrawals of $894.25 per month should not be considered income for the purpose of calculating child support and maintenance because he had no choice but to take the distributions from the inherited IRAs (now transferred into his own IRA) and the inheritance was not marital property. He further stated that "[the circuit court] ruled that [the petitioner] was not entitled to my nonmarital inheritance."

¶ 9    On September 5, 2018, the circuit court entered an order declining to include the respondent's inherited mandatory retirement distributions when calculating child support and maintenance. Following the circuit court's entry of the September 5, 2018, order, the petitioner filed a motion to reconsider the September 5, 2018, order on October 5, 2018. The circuit court denied the petitioner's motion to reconsider on January 29, 2019. The petitioner then attempted to appeal the circuit court's September 5, 2018, order in this court in case No. 5-19-0075. However, that appeal was dismissed for lack of jurisdiction because the September 5, 2018, order was not a final and appealable order.

¶ 10    On February 18, 2020, the petitioner made an oral motion before the circuit court requesting that it certify the issue of whether mandatory IRA distributions constituted income as a question for interlocutory appeal pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). On that same day, the circuit court granted the motion and entered an order pursuant to Rule 308, certifying the aforementioned certified question for our review, and we subsequently granted the petitioner's petition for leave to appeal.

¶ 11                                II. ANALYSIS

¶ 12    We begin our analysis with an outline of the applicable standard of review. This appeal concerns questions of law certified by the circuit court pursuant to Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019); therefore, our standard of review is *de novo*. *In re M.M.D.*, 213 Ill. 2d 105,

5

113 (2004). "Although the scope of our review is generally limited to the questions that are certified by the circuit court, if the questions so certified require limitation in order to materially advance the ultimate termination of the litigation, such limitation is proper." *Crawford County Oil, LLC v. Weger*, 2014 IL App (5th) 130382, ¶ 11. "In addition, in the interests of judicial economy and the need to reach an equitable result, we may consider the propriety of the circuit court order that gave rise to these proceedings." *Id.*

¶ 13    The issue of whether IRA distributions or withdrawals constitute "income" as it relates to child support and maintenance payments is currently unsettled in Illinois. Before we get into our analysis of the main issue raised by the certified question before us, we first quickly discuss the definition of "income" under the Act that controls child support and maintenance payments. The term "gross income" has the same meaning in regard to both child support payments and maintenance payments, "except maintenance payments in the pending proceedings shall not be included." 750 ILCS 5/504(b-3), (b-3.5) (West 2018). The term "gross income" is simply defined in the Act as "all income from all sources." *Id.* § 505(a)(3)(A). The definition then goes on to list numerous specific benefits or payments that are exempted from being counted as income, none of which are applicable to this case. *Id.* The Act does not separately define the term "income" despite it being used within the definition for "gross income." Thus, as our Illinois Supreme Court did in *In re Marriage of Rogers*, 213 Ill. 2d 129 (2004), we look to the plain meaning. "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time.' " *Id.* at 136-37 (quoting Webster's Third New International Dictionary 1143 (1986)). Black's Law Dictionary defines income as " '[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business,

6

investments, royalties, gifts and the like.' " *Id.* at 137 (quoting Black's Law Dictionary 778 (8th ed. 2004)). "Under these definitions, a variety of resources that would not be taxable under the Internal Revenue Code will qualify as income for the purposes of child support." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 54. Our Illinois Supreme Court has held that income "includes gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children." *In re Marriage of Mayfield*, 2013 IL 114655, ¶ 16 (citing *Rogers*, 213 Ill. 2d at 137).

¶ 14    Having discussed the definition of the term "income" under the Act, we now turn to Illinois case law for guidance as to the certified question before this court. While a number of appellate court cases have addressed the specific issue of IRA distributions in the context of child support and maintenance payments, our Illinois Supreme Court has not. Instead, the most analogous case to the present in which our Illinois Supreme Court has given guidance is *In re Marriage of McGrath*, 2012 IL 112792. At issue in *McGrath* was whether money that an unemployed parent regularly withdrew from a savings account must be included in the calculation of income when setting child support under section 505 of the Act. *Id.* ¶ 10. The facts of *McGrath* were unique because although the parent was unemployed, he was using his savings to "maintain a lifestyle in which his household expenses were similar to [the] petitioner's expenses for a household of three." *Id.* ¶ 6. The Illinois Supreme Court noted the following in relation to the money withdrawn from the savings account:

"Money that a person withdraws from a savings account simply does not fit into any of these definitions. The money in the account already belongs to the account's owner, and simply withdrawing it does not represent a gain or benefit to the owner. The money is not

7

coming in as an increment or addition, and the account owner is not 'receiving' the money because it already belongs to him." *Id.* ¶ 14.

¶ 15    The Illinois Supreme Court went on to state that, even though the money withdrawn from a savings account would not constitute "income" because it was money that "already belongs to him" (*id.*), it might be appropriate for a court to determine if a deviation may be necessary under section 505(a)(2) of the Act (*id.* ¶ 16), which allows for the circuit court to deviate from the standard child support and maintenance calculations where the income amount does not properly represent the financial status of the party required to pay support. Thus, focusing on the issue before us of what constitutes "income," the takeaway from *McGrath* is the Illinois Supreme Court's holding that the withdrawals from the savings account were not income under the Act because "[t]he money in the account already belongs to the account's owner, and simply withdrawing it does not represent a gain or benefit to the owner." *Id.* ¶ 14.

¶ 16    The respondent in this case argues that the holding in *McGrath* supports his position that an IRA distribution, which is similar to a savings account withdrawal, does not constitute income under the Act. Specifically, he argues that "the money that [the respondent] has in his IRA already belongs to him. It belonged to him the minute that the October 11, 2016, judgment of dissolution became final." We disagree and believe the respondent oversimplifies the *McGrath* holding.

¶ 17    First, we take issue with the respondent's assertion that the money "belonged to him the minute that the October 11, 2016, judgment of dissolution became final." While it is true that the October 11, 2016, order awarded the respondent the inheritance based upon the parties' stipulation that the inheritance was nonmarital property, there was no finding in the circuit court's order or any language in the parties' property settlement agreement that indicated that the inheritance was now barred from being considered income for the purposes of child support and maintenance. The

8

order simply stated "[t]hat [the respondent] is awarded all of his inherited funds, including his Vanguard Inherited IRA, his Vanguard Inherited Roth IRA, his Bank of America account (#8827), his Bank of America Money Market Savings account (#4302), and his TD Ameritrade account." Nowhere in the order or any other pleadings did the petitioner relinquish her right to or claim to the inheritance. See *In re Marriage of McLauchlan*, 2012 IL App (1st) 102114 (property settlement agreement in the dissolution of marriage case controlled where former wife had specifically waived any and all interests in former husband's retirement plans). Instead, this order merely acknowledged that this inheritance constituted nonmarital property that should be awarded to the respondent. This court has previously held that retirement benefits awarded to a party following a dissolution of marriage are not barred from use in determining income for child support purposes. See *In re Marriage of Klomps*, 286 Ill. App. 3d 710, 715-17 (1997). Whether the money was awarded to the respondent and whether that money can later be considered income for the purposes of determining the amount of child support and maintenance are two separate questions. Thus, here, where there was no waiver of the petitioner's interests in the inheritance and, in fact, the petitioner challenged the circuit court's refusal to include the inheritance in its initial calculation of child support and maintenance in her petition to reconsider following the original October 11, 2016, order, the inherited IRAs are not immune from later being considered as income for the purposes of determining child support and maintenance.

¶ 18    Understanding that the circuit court's awarding of the inheritance to the respondent does not preclude it from being included in child support and maintenance calculations, we now look at the holding of *McGrath* to see if it still controls this case as the respondent contends. The Illinois Supreme Court in *McGrath* was addressing withdrawals from a savings account, not an IRA distribution. In fact, despite the lower court's reliance on cases that dealt with IRA withdrawals,

9

the *McGrath* court did not specifically speak to IRAs in its opinion. However, despite this, we still find the reasoning behind the *McGrath* court's holding to be instructive, especially when read alongside the case law specifically dealing with IRAs. The *McGrath* court ruled that the withdrawals from the savings account did not constitute income because "[t]he money in the account already belongs to the account's owner, and simply withdrawing it does not represent a gain or benefit to the owner." *McGrath*, 2012 IL 112792, ¶ 14. In other words, the *McGrath* court looked past the type of account, choosing not to make a bright-line rule, and instead looked at the money held within the account being withdrawn to determine if that money should be considered as income. Because the money held within the savings account was already earned and placed into the account, the withdrawal did not represent a "gain" or a "benefit." Though the *McGrath* court does not expressly state so in its opinion, it appears the money contained within the savings account had already been considered "income" at some point prior. Thus, because that money had already been considered income at some time prior to the withdrawal, the money withdrawn could not now also constitute income. This issue has been referred to by the appellate courts as the issue of "double counting." We believe it is now helpful to turn to the case law that specifically addresses IRAs and discusses the "double counting" issue.

¶ 19    There are three cases that we find warrant discussion. The first case is *In re Marriage of Lindman*, 356 Ill. App. 3d 462 (2005). *Lindman* is a Second District case in which the court held generally that distributions from an IRA constituted "income" for the purpose of calculating income under the Act. *Id.* at 466-67. The court noted that under Illinois law, for the purpose of calculating child support, such items as worker's compensation awards, military allowances, deferred compensation payments, and even pensions, constituted "income." *Id.* at 466. The court went on to state, "[w]e see no reason to distinguish IRA disbursements from these items. Like all

10

of these items, IRA disbursements are a gain that may be measured in monetary form." *Id.* at 466. Importantly, the *Lindman* court separately acknowledged that there might be "a potential 'double counting' issue that petitioner does not raise." *Id.* at 470. The court went on to explain the issue of "double counting":

"Consider, for example, the following situation. In year one, a court sets a parent's child support obligation at X. This amount is based on a calculation of the parent's year one net income, which includes money the parent puts into an IRA. In year five, the parent begins receiving disbursements from the IRA, and, that same year, the parent asks the court to modify his or her child support obligation. To determine whether modification is proper, the court looks to see whether there has been a change in the parent's net income. See 750 ILCS 5/510 (West 2002). In making that determination, the court considers as part of the parent's year five net income the amount of the disbursements from the IRA. It may be argued that the court is double counting this money, that is, it is counting the money on its way into and its way out of the IRA. In other words, the money placed into the IRA from year one to year five is being counted twice. To avoid double counting in this situation, the court may have to determine what percentage of the IRA money was considered in the year one net income calculation and discount the year five net income calculation accordingly."

*Id.*

While the court acknowledged the potential issue, it went on to decline to take a firm position because the petitioner in *Lindman* did not raise the issue or claim that the IRA money had been double counted. *Id.* at 470-71.

¶ 20    Following *Lindman*, the Fourth District heard the case of *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845 (2008). The court in *O'Daniel* disagreed with the *Lindman* decision, stating that

11

the "Second District's decision does not adequately take into account that IRAs are ordinarily self-funded by the individual possessing the retirement account." *Id.* at 850. The court went on to note:

> "Except for the tax benefits a person gets from an IRA and the penalties he or she will incur if he or she withdraws the money early, an IRA basically is no different than a savings account, although the risks may differ. The money the individual places in an IRA already belongs to that individual. When an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income. The only portion of the IRA that would constitute a gain for the individual would be the interest and/or appreciation earnings from the IRA." *Id.*

The court finally noted that it did not have before it "what portion of [the former husband's] IRA was made up of his contributions. As a result, [the court could not] say what portion of [the former husband's] withdrawals might have constituted income for child-support purposes." *Id.* Thus, following *O'Daniel*, it appeared that the appellate court case law was split as to how to handle IRA distributions when calculating child support and maintenance.

¶ 21    In 2018, the Second District revisited the issue in *Verhines*, 2018 IL App (2d) 171034. The court in *Verhines* opined that despite the appearances of *Lindman* and *O'Daniel*, the cases may not directly contradict each other. The court explained:

> "We are not convinced that *Lindman* and *O'Daniel* are in absolute conflict. *Lindman* stated that IRA withdrawals are income, after subtracting for 'double counting.' (It did not consider 'double counting,' because the appellant did not raise the issue.) *O'Daniel* stated that IRA withdrawals are not income, except for that portion representing interest and appreciation. (It did not consider interest and appreciation because the

12

appellant did not raise the issue.) Thus, both *Lindman* and *O'Daniel* allow for the possibility that a portion of IRA withdrawals would constitute income.

*Lindman* stated that double counting would occur if earnings deposited into IRA were counted as income both in the year they were deposited and in the year they were withdrawn. [Citation.] To avoid that double counting, the court might have to determine what percentage of the IRA was considered income in the year it was deposited and discount that amount from the calculation of income in the year of withdrawal. [Citation.] The *Lindman* court detailed a double-counting hypothetical where the father contributed to and withdrew from the IRA during years that he was paying child support. However, we did not preclude the double-counting scenario set forth in *O'Daniel*. The double-counting scenario set forth in *O'Daniel* was broader. *O'Daniel* excluded as income not only what had already been documented as income in a prior support year, but anything that was not new growth, interest, or appreciation." *Id.* ¶¶ 65-66.

¶ 22 After reviewing the case law as discussed above, and taking *McGrath*, *Lindman*, *O'Daniel*, and *Verhines* together, we find that the proper mechanism for determining if an IRA distribution or withdrawal is "income" for the purposes of child support and maintenance is to first determine the source of the money at issue and whether or not that money has been previously imputed against the individual receiving the distribution or withdraw so as to avoid double counting. If the money that constitutes the IRA has already been imputed against the party receiving the distribution or withdrawal as "income" for child support and maintenance purposes, then as stated in *O'Daniel*,

"[t]he money the individual places in an IRA already belongs to that individual. When an individual withdraws money he placed into an IRA, he does not gain anything as the money

13

was already his. Therefore, it is not a gain and not income. The only portion of the IRA that would constitute a gain for the individual would be the interest and/or appreciation earnings from the IRA." *O'Daniel*, 382 Ill. App. 3d at 850.

We believe it would be improper to count the money both as "income" first when it is earned or initially received and then again when it is withdrawn. It is our opinion that this is in accordance with the reasoning of the Illinois Supreme Court's decision in *McGrath* that double counting should be avoided.

¶ 23 Turning to the present case, we note that we have different facts from the previous cases discussed above. Here, the respondent has inherited a large sum of money from his mother. The bulk of this money is held in IRAs that have been left to him. Due to federal law, the respondent is required to take distributions from these IRAs in the sum of approximately $10,700 per year. He has petitioned the circuit court to lower the amount of child support and maintenance he is required to pay, mainly due to the fact that he now works for a different employer and is not making as much money as he was in 2016. However, if we factor the approximately $10,700 worth of IRA distributions into his income when determining his child support and maintenance payments, the respondent's income is actually higher than it was in 2016 by approximately $8000.

¶ 24 "The Act creates a rebuttable presumption that all income, unless specifically excluded by the statute, is income for support purposes." *In re Marriage of Sharp*, 369 Ill. App. 3d 271, 280 (2006). In *Rogers*, 213 Ill. 2d at 137, the Illinois Supreme Court held that gifts or "loans" from parents received by a father constitute income for the purpose of child support payments because "[t]hey represented a valuable benefit to the father that enhanced his wealth and facilitated his ability to support [his child]." Although there are no published Illinois decisions directly addressing the question of whether inheritance constitutes income for the purposes of child support

14

or maintenance, based upon the Illinois Supreme Court's holding in *Rogers*, remaining consistent with our *dicta* in *In re Marriage of Fortner*, 2016 IL App (5th) 150246, ¶ 11 n.1, and in keeping with the spirit of the Act, we find that the statutory definition of "income" as found within the Act is broad enough that it includes an individual's inheritance when determining child support and maintenance.

¶ 25    Therefore, because an individual's inheritance must be considered as income under the Act and, in the present case before us, there is no evidence in the record that the circuit court has ever factored the $615,000 inheritance into any child support or maintenance calculations, we now answer the certified question in the affirmative: the distributions that the respondent is receiving from the inherited IRAs must be included as income in the calculations for determining child support and maintenance. To further clarify, we distinguish the present case from that in *McGrath*, in that the money being withdrawn here is not money that "already belonged to the [account] owner" but, instead, was a gift from his mother that he inherited upon her death, money that has never been imputed to him as income in child support or maintenance calculations. Thus, because the money has never been imputed to him as income, we do not have an issue of "double counting." If, however, the circuit court had imputed the inheritance as income to the respondent in its initial determination of child support and maintenance in the October 11, 2016, order, we would not now do so upon his receipt of the distributions because the money received would have already been counted as income. The fact that the respondent is required by law to take the distributions, or the fact that he chooses to move the distributions immediately into another IRA, is of no concern. Because the money is being distributed, the respondent is receiving the benefit of the money to use as he pleases, and it has not previously been imputed to him as income, the circuit court must now include it as income for the purpose of calculating child support and maintenance.

15

## III. CONCLUSION

For the foregoing reasons, and having answered the certified question as we have reframed in the affirmative, we vacate the circuit court's September 5, 2018, order and remand these proceedings to the circuit court with directions that the circuit court recalculate the child support and maintenance amounts in accordance with this opinion.

Certified question answered and order vacated; cause remanded with directions.

**No. 5-20-0099**

| | |
|---|---|
| **Cite as:** | *In re Marriage of Dahm-Schell*, 2020 IL App (5th) 200099 |
| **Decision Under Review:** | Appeal from the Circuit Court of St. Clair County, No. 14-D-637; the Hon. Patricia H. Kievlan, Judge, presiding. |
| **Attorneys for Appellant:** | Rhonda D. Fiss, of Law Office of Rhonda D. Fiss, P.C., of Belleville, for appellant. |
| **Attorneys for Appellee:** | Dustin S. Hudson, of Neubauer, Johnston & Hudson, P.C., of Fairview Heights, for appellee. |